**Yoaman L. SMITH, et al., Plaintiffs,**

v.

**UNION PACIFIC RAILROAD COMPANY, a Utah corporation, Defendant.**

Civ. A. Nos. 93–K–600, 93–K–601 and 94–K–1122.

United States District Court,
D. Colorado.

March 6, 1995.

Roger R. Roe, Jr., Yaeger, Jungbauer, et al., Minneapolis, MN, Brian J. Berardini, Brown & Berardini, Denver, CO, for plaintiffs.

Mark C. Hansen, Gorsuch, Kirgis, et al., Denver, CO, for defendant.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

Plaintiff Yoaman Smith seeks entry of a protective order or preliminary injunction to prevent Union Pacific (UP) from requiring him to attend a "back-to-work" physical examination by UP doctors or from disciplining him pursuant to the parties' collective bargaining agreement for failing to do so. In the alternative, Smith seeks an order *in limine* precluding UP from offering the results of either proceeding as evidence in the pending trial of Smith's FELA claims. Smith contends UP is "seizing" an opportunity to discharge him for failing to attend an unnecessary and improper physical in order to reduce the amount of damages Smith can recover on his FELA claims.[1]

■ Smith suggests somewhat persuasively that UP is using the "back to work" physical to gain unfair advantage in the FELA litigation. Smith contends the physical is unnecessary. He has already attended a court ordered Independent Medical Examination as well as a previous "back to work" physical in 1994. Further Smith contends UP's attempt to compel his attendance at another physical is contrary to an order issued by Magistrate–Judge Schlatter in this case permitting UP a psychological examination of Smith on January 17–19, 1995 and a psychiatric examination on February 3, 1995, but no other "medical, psychiatric or psychological examination of plaintiff Yoaman Smith ... without an appropriate court order." *See* Order (filed January 30, 1995).

UP counters the "back to work" physical at issue predates Magistrate–Judge Schlatter's Order and asserts this court lacks jurisdiction to enjoin either that physical or any disciplinary action that may ensue from Smith's failure to attend. It argues the dispute between Smith and UP is a "minor" internal labor grievance within the definition of that term under the collective bargaining agreement and that any action interfering with UP's efforts to resolve the dispute under the agreement is preempted by the Railway Labor Act, 45 U.S.C. § 151 *et seq.* UP argues Smith's grievance cannot be litigated in court, but must be referred to the National Railroad Adjustment Board for compulsory arbitration.

I find UP's argument facile and unpersuasive. Clearly the "back-to-work" physical at issue bears directly on the issues pending in this case. It is entirely possible Smith could say something against his interest during the examination that could be used against him in this action. Should Smith continue to refuse to attend the physical and be fired pursuant to the terms of the collective bargaining agreement (apparently without representation by counsel),[2] UP could signifi-

---

1. I have already found UP liable as a matter of law in this consolidated FELA litigation for directing Smith's train into a cloud of anhydrous ammonia on August 13, 1991. *See Elliott v.*

*Union Pacific Railroad Co.,* 863 F.Supp. 1384 (D.Colo.1994).

2. Smith's counsel Roger Roe asserts he has had experience with such disciplinary proceedings

cantly reduce the nature and amount of damages for which it is liable and obtain an unfair advantage in this litigation.

■ To the extent the "back-to-work" physical and ensuing disciplinary proceedings bear on issues relevant to this FELA action and generate facts or medical opinions that could be used as evidence against Smith, it constitutes "discovery" within the meaning of Fed.R.Civ.P. 26(b)(1) and is subject to this court's authority under Rule 26(c) (and, pursuant to the Order of Reference in this case, the authority of the Magistrate Judge) to manage and control "as justice requires." *See generally* 8 Wright, Miller & Marcus, *Federal Practice and Procedure: Civil 2d* § 2036, pp. 487–88 (1994) (the district court has complete control over the discovery process). I find justice requires entry of a protective order prohibiting UP from requiring Smith to attend the "back to work" physical at issue and from initiating any disciplinary proceedings against Smith based on his failure to so attend. Should UP attempt to circumvent this order as it did the Order issued by the Magistrate Judge, it would be subject to any of the sanctions listed in Fed. R.Civ.P. 37(b), including contempt.[3]

■ A district court has broad discretion in using its contempt power to require adherence to court orders. *United States v. Riewe,* 676 F.2d 418, 421 (10th Cir.1982). Recalcitrant parties can be held in civil or criminal contempt. The primary purpose of criminal contempt is to punish defiance of a court's authority. *Universal Motor Oils, Co. v. Amoco Oil Co.,* 743 F.Supp. 1484, 1486 (D.Kan.1990). The normal beneficiaries of such an order are the courts and the public interest. *Id.* Civil contempt, by contrast, is characterized by the court's desire to compel or coerce obedience to a court order or to compensate a litigant for injuries sustained as a result of the disobedience. *Id.; see*

*O'Connor v. Midwest Pipe Fabrications,* 972 F.2d 1204, 1210 (10th Cir.1992). The normal beneficiaries are the individual litigants. *Universal Motor Oils* at 1486, citing *Ager v. Jane C. Stormont Hosp. & Training School for Nurses,* 622 F.2d 496, 499–500 (10th Cir. 1980).

■ Determination of the correct sanction for a discovery violation is a fact-specific inquiry the district court is best qualified to make. *Ehrenhaus v. Reynolds,* 965 F.2d 916, 920 (10th Cir.1992) (upholding dismissal of action as sanction for violating discovery order). According to the Tenth Circuit, at least five factors should be considered: (1) the degree of actual prejudice to the contemnor's adversary; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) where the sanction considered is dismissal of the action, whether the court warned the party in advance that dismissal would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions. *Id.* at 921 (citations omitted).

As long as this case is pending, the parties shall regulate their conduct regarding all matters relevant to this case in accordance with the letter and spirit of the orders issued by this court. Conduct violating these orders will not be countenanced and cannot be justified by resort to the provisions of a generic bargaining agreement. This court has jurisdiction to enter the protective order sought by Smith and, accordingly, it is

ORDERED defendant Union Pacific Railroad Company may neither compel Smith to attend another "back to work" physical nor commence disciplinary proceedings against him for failing to do so. Until after Smith's pending FELA lawsuit against UP is resolved and this court is divested of its jurisdiction over the parties by entry of a final

---

and contends Smith will not be permitted representation by legal counsel, even though Smith will be questioned about issues directly related to his FELA lawsuit, namely, his ability to work. UP did not refute this assertion.

3. While attempts to circumvent or undermine a protective order are not specifically identified under Rule 37 as sanctionable offenses, the rule

is sufficiently flexible to permit it. *See generally* Wright, Miller & Marcus, *supra,* § 2281 p. 600 (when the discovery procedure itself requires a court order, as in Rule 35 orders for mental or physical examinations or Rule 26(c) protective orders, failure to obey the order can be punished immediately by any of the sanctions listed in Rule 37(b)).

judgment, the orders of this court shall govern the relationship of the parties.