Tim BERNAL, Plaintiff,

v.

SOUTHERN PACIFIC TRANSPORTA-
TION COMPANY; Union Pacific Rail-
road; and Does 1 through 50, inclusive,
Defendants.

No. CIV. S 98–1854 FCD PAN.

United States District Court,
E.D. California.

March 14, 2000.

Larry Lockshin, Larry Lockshin, a Law
Corporation, Sacramento, CA, for Plaintiff.

Robert N. Belt, Michael L. Whitcomb, Un-
ion Pacific Railroad Company Law Depart-
ment, Roseville, CA, for Defendant.

*MEMORANDUM AND ORDER*

DAMRELL, District Judge.

Plaintiff Tim Bernal applies to this court,
*ex parte,* for issuance of a Temporary Re-

straining Order or alternatively, a Protective Order, prohibiting defendants Southern Pacific Transportation Company and its successor in interest Union Pacific Railroad (hereinafter "SP/UP") from taking disciplinary action against him for failing to respond to *ex parte* written inquiries regarding his medical condition. Plaintiff also requests an award of attorney's fees, asserting that SP/UP's opposition to his motion is without substantial justification. SP/UP opposes the application and motion, and request for attorney's fees.

The court heard oral argument on March 10, 2000. For the reasons set forth below, plaintiff's motion for a protective order and for attorney's fees is GRANTED.

## BACKGROUND

Plaintiff brought this FELA action on September 26, 1998. Plaintiff alleges he suffered serious and permanent disabling injuries to his back over the course of his 28-year railroad career as a brakeman/conductor. Plaintiff has been unable to work since August 1996, but is still on SP/UP's seniority roster as an employee on a disability leave of absence. Plaintiff's doctors have informed him that he is totally disabled from ever returning to his railroad employment.

As a result of his disability, plaintiff applied for, and was awarded, benefits from the United States Railroad Retirement Board in September 1996. *See* 45 U.S.C. § 231. Plaintiff currently receives a disability annuity.

In April, May, June, October and November 1999, and January 2000, SP/UP sent plaintiff letters requesting information on the status of his medical condition. On the advice of his attorney, plaintiff refused delivery of these letters. Additionally, in August 1999, a special agent visited plaintiff's home to hand-deliver more letters from SP/UP. Plaintiff was not at home at the time.

In August 1999, plaintiff's counsel wrote to SP/UP's counsel objecting to these *ex parte*

contacts. In October 1999, SP/UP sent plaintiff's counsel copies of the letters they had attempted to deliver to plaintiff.

On February 8, 2000, plaintiff was informed by his union representative that SP/UP had scheduled a disciplinary investigation for February 15, 2000. Plaintiff is being charged with insubordination based on an alleged rule violation for failing to provide the medical information requested on an *ex parte* basis by SP/UP. The date for the hearing was later continued to March 14, 2000.

On February 15, 2000, plaintiff's counsel wrote SP/UP in an attempt to resolve this matter. On February 22, 2000, SP/UP replied that they would make no agreements, and refused to cancel the disciplinary hearing.

Discovery closed January 28, 2000. Trial is set for July 31, 2000.

## ANALYSIS

### 1. Protective Order

Plaintiff argues that SP/UP's written inquiries regarding plaintiff's medical condition violate the California Rules of Professional Conduct governing *ex parte* communications with represented parties,[1] and constitute an impermissible attempt to circumvent the rules of discovery.

SP/UP opposes the motion on two grounds: first, that the Federal Railway Labor Act, 45 U.S.C. §§ 151 *et seq.* ("RLA"), preempts the subject matter jurisdiction of all federal and state courts over this "minor dispute" which is controlled by the parties' Collective Bargaining Agreement ("CBA"); and second, that plaintiff has not presented good cause for issuance of a protective order, because SP/UP's requests for information are "statutorily authorized," and thus do not constitute "discovery."

■ As a preliminary matter, this court asserts it does have jurisdiction over this dispute. The RLA vests exclusive jurisdic-

---

1. *See* Cal. Rules of Prof. Conduct, Rule 2–100(A) ("While representing a client, a member shall not communicate directly or indirectly about the subject of the representation with a party the member knows to be represented by another lawyer in the matter unless the member has the consent of the other lawyer.")

tion in the National Railroad Adjustment Board ("NRAB") over "disputes between an employee ... and a carrier ... growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions...." 45 U.S.C. §§ 151a & 153(i).

The Supreme Court has held that one such class of disputes, known as "minor disputes," are those which "involve controversies over the meaning of an existing collective bargaining agreement in a particular fact situation." *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 256, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994) (citation omitted). If, however, resolution of the dispute does not require interpretation of the CBA, RLA preemption will not be found. *See id.* at 262–65, 114 S.Ct. 2239. For instance, the RLA does not preempt "causes of action to enforce rights that are independent of the CBA." *Id.* at 256, 114 S.Ct. 2239.

Here, plaintiff possesses a right, like all federal litigants, to the protections of the Federal Rules of Civil Procedure governing discovery. The court need not look to the CBA to determine that SP/UP's conduct contravenes those rules of discovery.[2] *See Riensch v. Union Pacific Railroad Co.*, 12 F.Supp.2d 1136, 1139–40 (D.Colo.1998).

■ Moreover, this same logic dictates a finding that there exists good cause for issuance of a protective order to put a stop to SP/UP's conduct. *See id.* ("It is ... inconceivable that Congress afforded injured workers the right to seek recovery pursuant to the FELA in federal court but denied those same injured workers the ability to invoke the Federal Rules of Civil Procedure during the pendency of their FELA actions ... UP's [actions] threaten[ ] the integrity of the judicial process and implicate[ ] [plaintiff's] right to counsel."); *Vicary v. Consolidated Rail Corp.*, 942 F.Supp. 1146, 1150–51 (N.D.Oh.1996) (issuing a protective order on the grounds that defendant railroad's information gathering efforts "cannot ignore the requirements of the civil rules and other legal constraints that check [the railroad's] power to dominate the plaintiff while he is a litigant in this Court.")

Discovery is closed in this case. SP/UP may not continue to engage in *ex parte* communications ordering plaintiff to disclose information regarding the subject matter of this litigation under the guise of exercising its rights under the CBA.[3]

### 2. Attorney's Fees

■ Plaintiff further asserts that he is entitled to an award of attorney's fees in seeking this protective order, pursuant to Rule 37(a)(4) of the Federal Rules of Civil Procedure, because SP/UP's opposition to plaintiff's motion is without substantial justification. Specifically, plaintiff identifies several previous occasions, in similar FELA cases between SP/UP and other injured employees, wherein the plaintiff/employee was forced to bring a motion substantially identical to the pending motion, in order to prevent SP/UP from engaging in similar conduct. Because the judges presiding over those actions have already found the conduct objectionable,[4] plaintiff argues that SP/UP has no

---

2. The court rejects SP/UP's disingenuous contention that the written requests for medical information do not constitute "discovery" within the meaning of the Federal Rules. *See Smith v. Union Pacific Railroad Co.*, 878 F.Supp. 171, 173 (D.Colo.1995) ("To the extent the [compelled physical exam] and ensuing disciplinary proceedings bear on issues relevant to this FELA action and generate facts or medical opinions that could be used as evidence against [plaintiff], it constitutes 'discovery' within the meaning of [Rule] 26(b)(1) and is subject to this court's authority under Rule 26(c) ... to manage and control 'as justice requires.' ")

3. SP/UP's contention that they seek only to exercise their rights under the CBA, for the legitimate business purpose of monitoring the disability status of current employees such as the plaintiff, is belied by its refusal to stipulate at oral argument that it will not seek to use any information acquired through the medical questionnaires in this litigation. In fact, this representation conflicts with the deposition testimony of SP/UP's own employee, Superintendent Carl Bradley, who testified that when an employee is receiving a disability pension, like the plaintiff is in this case, SP/UP has no need for updated medical information. *See* Bradley Dep. at 83.

4. *See Pope v. Southern Pacific Transp. Co.*, No. CIV–S–97–0226 DFL/GGH, Order of September 3, 1998 (denying plaintiff's motion for protective order without prejudice upon SP/UP's represen-

legitimate basis for continuing the conduct, or for opposing this motion, thus warranting the imposition of sanctions. The court agrees. SP/UP has been advised by judges of this court that its practice of sending medical questionnaires on an *ex parte* basis to FELA plaintiffs during the course of litigation, and then threatening disciplinary action when the plaintiffs failed to respond, is at odds with the Federal Rules of Civil Procedure and the California Rules of Professional Conduct.[5] *See* n. 4, *supra.*

SP/UP's decision to oppose plaintiff's motion in the face of those admonishments, relying upon the same legal arguments soundly rejected therein, concerns this court. *See id.; see also Vicary,* 942 F.Supp. at 1150 (awarding attorney's fees to plaintiff in circumstances nearly identical to the case at bar, on the grounds that the railroad's "effort to circumvent the integrity of the judicial process and the doctor-patient relationship . . . endangers the right to counsel and a fair trial.").

Accordingly the court finds that SP/UP's opposition to plaintiff's motion is without substantial justification. The court further finds the attorney's fees incurred by plaintiff's counsel in seeking the relief herein are reasonable. SP/UP shall compensate plaintiff, pursuant to Rule 37(a)(4), for the fees incurred in bringing this motion.

## CONCLUSION

1. Plaintiff's application for a temporary restraining order, or, in the alternative, motion for a protective order, is deemed to be a motion for protective order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, and is GRANTED.

2. SP/UP MAY NOT COMPEL plaintiff to attend the disciplinary hearing set for March 14, 2000, nor may SP/UP take any disciplinary action against plaintiff for his failure to attend said hearing.

3. During the pendency of this litigation, SP/UP MAY NOT COMPEL plaintiff to provide personal medical information relating to the subject matter of this litigation, except in accordance with the Federal Rules of Civil Procedure, nor shall SP/UP take disciplinary action against plaintiff for his noncompliance with such requests.

4. SP/UP SHALL pay plaintiff the sum of THREE THOUSAND DOLLARS ($3,000) to compensate plaintiff for attorney's fees incurred in seeking the relief provided herein. The sum is to be paid **not later than ten (10) days** from the date of service of this Order.

IT IS SO ORDERED.

---

tation that it would not attempt to discipline plaintiff for failing to provide information in connection with *ex parte* fitness-for-duty examinations, and reminding SP/UP that it "should of course refrain from communication with [plaintiff], without the consent of his attorney, regarding the subject matter of this litigation"); *Kafouros v. Southern Pacific Transp. Co.,* Sac. Cty. Sup.Ct. No. 97AS00691, Transcript of Proceedings dated July 10, 1998 (denying plaintiff's motion for a protective order based upon SP/UP's representations at oral argument that no further *ex parte* communications would occur during the pendency of the litigation); *Pulido v. Southern Pacific Transp. Co.,* No. CIV–S–2276 LKK JFM, Transcript of Proceedings dated February 18, 2000 (granting plaintiff's motion for a protective order prohibiting SP/UP from introducing into evidence any information obtained from plaintiff on an *ex parte* basis in connection with the collective bargaining agreement; court rejected SP/UP's jurisdiction argument, and chastised SP/UP for seeking medical information from plaintiff and his doctors on an *ex parte* basis, characterizing such tactics as an "end run" around the discovery process motivated by an "improper" purpose.)

5. SP/UP cannot plead ignorance in this case. Just last month, SP/UP counsel represented to Judge Karlton that he "had no idea letters were sent or an investigation [hearing] was set" until plaintiff's counsel brought the motion for a protective order in that case. *See Pulido v. Southern Pacific Transp. Co.,* No. CIV–S–2276 LKK JFM, Transcript of Proceedings dated February 18, 2000, at 6. Obviously, SP/UP and its counsel were aware of SP/UP's practice of sending these medical questionnaires when they filed their opposition to the instant motion.